```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                   CORPUS CHRISTI DIVISION


UNITED STATES OF AMERICA,      §
                               §
vs.                            §    CR. NO. C-07-436
                               §
PEDRO MARTINEZ.                §
                               §
```

## ORDER DENYING MOTION TO SUPPRESS

Following a September 14, 2007 hearing on Defendant Pedro Martinez' Motion to Suppress (D.E. 10), the Court DENIED the motion. This Order sets forth the reasons for that denial.

**I.   JURISDICTION**

The Court has jurisdiction over this matter pursuant to 18 U.S.C. § 3231 because the Defendant is charged with committing an offense against the laws of the United States.

**II.  PROCEDURAL BACKGROUND**

By criminal complaint filed August 3, 2007, Defendant Pedro Martinez ("Martinez") was charged with possession with intent to distribute approximately 670 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). (See D.E. 1). Martinez pled not guilty, and on September 7, 2007, he filed a motion to suppress, arguing that the evidence obtained during his detention and arrest was obtained in violation of various constitutional provisions. (D.E. 10). On September 13, 2007, the Government filed a response in opposition. (D.E. 12).

**III. <u>THE SUPPRESSION HEARING</u>**

A hearing was held on Martinez' motion to suppress on September 14, 2007. Border Patrol Agent ("BPA") Hector Trevino testified that, on August, 2, 2007, at approximately 9:50 p.m., Martinez arrived at the primary inspection point driving a blue, 53-foot tractor-trailer. BPA Trevino asked Martinez if he was an American citizen and his destination, and he noticed that Martinez avoided eye contact and appeared nervous, answering his questions in a shaky voice.

BPA Trevino testified further that, during his immigration inspection, BPA Adrian Gonzalez was conducting an exterior inspection of the tractor-trailer with a service canine. BPA Gonzalez advised BPA Trevino that the dog had alerted to a narcotic odor coming from the trailer. BPA Trevino then asked Martinez for consent to search the tractor-trailer. Martinez gave his consent, and he was referred to the secondary inspection area.

BPA Adrian Gonzalez testified that, in the secondary inspection area, Martinez exited the tractor and sat on a bench near the checkpoint office. BPA Gonzalez and his dog conducted a secondary search, and the dog again alerted to the front driver's side corner of the trailer. BPA Gonzalez opened the trailer. The trailer was loaded with bales of cotton fiber, not on pallets. (<u>See</u> D.E. 13, GX-2). On cross-examination, BPA

Gonzalez agreed that cotton fibers did not necessarily have to be transported on pallets.

BPA Gonzalez testified further that he asked to see the bill of lading for Martinez' cargo. Martinez produced a copy, not the original. (See D.E. 13, GX-6). The trailer number on the bill did not correspond to the trailer driven by Martinez. Id. The bill of lading was not dated. Id. The name of the carrier on the bill, "Fine Line Transport," was not the name on the trailer.

BPA Gonzalez requested, and Martinez consented, to having the trailer searched. A border patrol agent and second drug canine crawled over the bales of cotton fiber to the front of the trailer where BPA Gonzalez' dog had first indicated the presence of narcotics. The second drug canine indicted the presence of drugs in this area as well. The agents sought to inspect the trailer further, but determined that they would not be able to without first removing the bales of cotton fiber. BPA Gonzalez testified that they were concerned that removing the bales from the trailer would result in damage to the cotton.

It was decided that x-ray would be used to evaluate the cause for the dogs' alert. As no mobile x-ray machine was available, two border patrol agents drove Martinez' tractor-trailer to the Port of Entry ("POE") in Hidalgo, about a ninety-minute drive, where there is an x-ray machine on site, while Martinez was transported in an unmarked vehicle. The x-ray

-3-

revealed that there was a false compartment in the nose, or front end, of the trailer, near the refrigeration unit. At approximately 3:30 a.m., BPA Gonzalez drilled a hole in the side of the trailer, and, when he retrieved the drill bit, he noticed it contained marijuana. (See D.E. 13, DX-7). Martinez was then placed under arrest and read his Miranda rights.

BPA Gonzalez continued that, Martinez was then transported back to Sarita, returning at approximately 5:30 a.m. He was placed in a holding cell, and again read his Miranda rights. Martinez later agreed to speak to Drug Enforcement Administration agents. He told them he was aware that there was marijuana in the trailer and that he had been paid to transport the marijuana to Waco, Texas.

**IV. DISCUSSION**

**A. Martinez' allegations.**

Martinez filed a bare bones motion to suppress, arguing in general terms that his detention and the search of his trailer violated his Fourth, Fifth, Sixth and Fourteenth Amendment rights, and that he sought to suppress the marijuana that was seized from the trailer and his post-arrest confession. (D.E. 10). At the hearing, Martinez' counsel argued that Martinez' prolonged detention was unreasonable and beyond the scope of the original stop. He argued further that the arrest itself was without probable cause.

**B.   Analysis.**

It is undisputed that the initial stop of Martinez by border patrol officers at the Sarita Checkpoint did not violate Martinez' constitutional rights.  "Stops for brief questioning routinely conducted at permanent [immigration] checkpoints are consistent with the Fourth Amendment and need not be authorized by warrant." United States v. Martinez-Fuerte, 428 U.S. 543, 566-67 (1976).  In Martinez-Fuerte, the Supreme Court noted that, in the context of immigration checkpoints, the principal protection of Fourth Amendment interests "lies in appropriate limitations on the scope of the stop." Id. at 652.  Thus, any further detention beyond a few brief questions or a request for documents evidencing a right to be in the United States must be based on consent or probable cause.  Id.

In this case, Martinez was initially stopped and questioned by BPA Trevino.  Martinez then consented to going to the secondary inspection area.  Martinez' consent is sufficient to authorize the prolonged detention at the secondary area. Martinez-Fuerte, 428 U.S. at 558.

Moreover, the Fifth Circuit has held that an immigration stop may be extended based upon an officer's "reasonable suspicion" of criminal activity. United States v. Portillo-Aguirre, 311 F.3d 647, 654 (5th Cir. 2002).  BPA Trevino testified that, at the primary area, Martinez was nervous during routine questioning, he avoided eye contact, and his hands were

shaking. BPA Gonzalez testified that his dog alerted to the exterior search of the trailer. These factors give rise to a "reasonable suspicion" to justify the agents sending Martinez to the secondary area. See United States v. Garcia-Garcia, 319 F.3d 726, 730 (5th Cir. 2003)("Once the dog alerted, the agents had, at a minimum, sufficient reasonable suspicion to permit them to prolong the stop to explore further the potential source of the dog's alert."); United States v. Brigham, 382 F.3d 500, 509 n. 8 (5th Cir. 2004) (en banc) (officer's suspicion reasonable to support continued detention where defendants appeared nervous, avoided eye contact, and answered questions indirectly).[1] Thus, between Martinez' consent and the agents' reasonable suspicion of criminal activity, the detention of Martinez beyond the primary inspection area was justified.

In the secondary inspection area, BPA Gonzalez' dog alerted a second time to the exterior of the vehicle, and Martinez again gave the officers permission to open and search the trailer. A second canine then alerted to the same area as did BPA Gonzalez' dog. The fact that two separate dogs alerted to the same area provided the agents with sufficient probable cause to suspect narcotics and to further extend the detention of Martinez. United States v. Williams, 69 F.3d 27, 28 (5th Cir. 1995)(a canine alert is sufficient to establish probable cause

---

[1] The Fifth Circuit has never held that nervousness alone is sufficient to create reasonable suspicion of criminal activity, and in fact, gives little or no weight to an officer's conclusional statement that a suspect appeared nervous. See e.g. United States v. Dortch, 199 F.3d 193, 199 (5th Cir. 1999).

to search a vehicle for drugs).  Moreover, the bill of lading that Martinez presented to the agents was undated, listed a different carrier, and identified a different trailer.  The Fifth Circuit has found probable cause in cases with similar evidence.  See e.g. Resendiz v. Miller, 203 F.3d 902, 903 (5th Cir. 2000) (probable cause found based on dog alert, large amount of cash, and vehicle registered day before arrest); United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999) (noting probable cause factors such as trail notorious for drug smuggling, nighttime, defendants' footprints, bruising on one defendant's shoulder, and defendants' evasive conduct).

The most time-consuming portion of the detention was determining how to examine the area of the trailer to which the dogs had alerted.  Officer Gonzalez attributed part of the delay to concern for the cargo, stating that the agents feared it would be damaged if unloaded and reloaded from the trailer.[2]  In addition, time was spent, albeit unsuccessfully, looking for a mobile x-ray machine.  That is, the uncontested facts demonstrate that the agents were attempting to complete the search in the most expeditious manner.

After it was decided to transport the tractor-trailer to the POE, Martinez accompanied the officers.  The x-ray was taken and the hidden compartment revealed.  Under the law of this

---

[2] In United States v. Ross, 456 U.S. 798 (1982), the Supreme Court noted that an individual has a significant interest in not having the upholstery of his or her car ripped.  Similarly, a legitimate transporter of goods would not want the cargo destroyed or damaged.

circuit, evidence of a hidden compartment supports probable cause for a search/arrest. United States v. Khanalizadeh, 493 F.3d 479, 484 (5th Cir. 2007). Thus, the finding of the compartment gave the agents additional probable cause to prolong the detention further.

Finally, the compartment was drilled into, a substance was found and determined to be marijuana, and Martinez was arrested. BPA Gonzalez testified that, from the initial stop of Martinez at the Sarita checkpoint at 9:50 p.m., until his arrest at the POE at 3:30 a.m., the entire detention lasted about six hours. The Court finds that the detention itself was reasonable and supported by probable cause throughout its duration.

Martinez was detained based on suspicion that he was smuggling narcotics. The duration of his detention was governed by the time period necessary to search his trailer for contraband. The border patrol agents "diligently pursued a means of investigation [*i.e.*, the x-ray machine] likely to quickly confirm or dispel" their reasonable suspicion that Defendant's trailer contained drugs. United States v. Hare, 150 F.3d 419, 427 (5th Cir. 1998) (quoting Sharpe, 470 U.S. at 683 n. 3). Under the circumstances of this case, Martinez' detention was "reasonably related in scope" to the border patrol agents' suspicion that he was smuggling contraband, and, thus, was permissible under the Fourth Amendment. See United States v. Montoya de Hernandez, 473 U.S. 531, 544 (1985) (holding that

the 16-hour detention of a woman suspected of smuggling contraband in her alimentary canal was "not unreasonably long," where woman refused an x-ray and customs agents were waiting for nature to take its course); United States v. Schlieve, No. 04-41112, 2006 U.S. App. LEXIS 7158, *13-15 (5th Cir. March 22, 2006) (holding that a forty-six minute detention was not unreasonable where officers had reasonable suspicion that Defendant was in possession of contraband and were attempting to locate a K-9 unit to confirm or dispel that suspicion).

There are no facts to support Martinez' contention that his prolonged detention rendered his confession involuntary. Indeed, the Supreme Court has sustained convictions where defendants have confessed after five hours of extensive *interrogation.* See Culombe v. Connecticut, 367 U.S. 568, 626 n. 88 (1961) for a discussion of cases in which defendants have been held hours and even days, and confessions are deemed voluntary over objection). Here, Martinez was not interrogated, rather, he simply observed and at least twice, consented to, the searches.

To the extent Martinez claims that his constitutional rights under the Fifth, Sixth, and Fourteenth Amendment were violated, he failed to brief or argue those points, and they are overruled.

## V.  CONCLUSION

For the reasons stated herein, and as announced at the September 14, 2007 hearing, Martinez' motion to suppress (D.E. 10) is DENIED.

SIGNED and ENTERED this 27th day of September, 2007.

_____
Janis Graham Jack
United States District Judge